EL PUEBLO, DEMANDANTE Y APELADO, *v.* JULIÁN, ACUSADO Y
APELANTE.

APELACIÓN procedente de la Corte de Distrito de Guayama
en causa por portar armas prohibidas.

No. 839.—Resuelto en julio 30, 1915.

PRUEBAS—OBJETO PRESENTADO COMO PRUEBA—REMISIÓN A LA CORTE DE APELA-
CIÓN.—Cuando un objeto presentado como prueba en la corte inferior no se
remite en forma a la corte de apelación, no existe derecho o autoridad alguna
para tomarlo en consideración al resolver el caso.

EXPOSICIÓN DEL CASO—PLIEGO DE EXCEPCIONES—HECHOS DEL JUICIO—QUIÉN DEBE
CERTIFICARLOS.—El secretario de la corte inferior no está autorizado para
agregar nada a los hechos del juicio, pues es el juez quien debe certificar
respecto a los mismos, certificación que toma la forma de una exposición del
caso o pliego de excepciones.

PRUEBAS—OBJETO PRESENTADO COMO PRUEBA—FORMA DE REMITIRLO ORIGINAL A
LA CORTE SUPREMA.—Si un apelante en lugar de escribir un objeto en el
pliego de excepciones o exposición del caso desea que se envíe original a la
Corte Suprema, la manera de hacerlo está descrita en la regla 40B de la corte.

Los hechos están expresados en la opinión.

El apelante no compareció.

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Lucas Julián fué denunciado por haber portado un arma prohibida. Se alega sustancialmente en la denuncia que en octubre 29 de 1914, a las 9.45 p. m., en la calle de Baldorioty de Guayama, Puerto Rico, el referido acusado ilegal, voluntaria y maliciosamente y con fines de ofensa y defensa, portaba y le fué ocupado sobre su persona, un garrote de 33½ x 4 pulgadas. Creemos que es evidente que las cuatro pulgadas a que se ha hecho referencia constituyen la circunferencia y no el diámetro del palo o garrote, pues un garrote de cuatro pulgadas de diámetro tendría próximamente una circunferencia de 13 pulgadas y no podría ser manejado.

Mientras se tramitaba esta apelación envió el secretario de la corte de distrito a este tribunal un bastón nudoso y algo grueso cuyas señas concuerdan con la descripción que del mismo se hace en la denuncia, teniendo todos los indicios de haber sido presentado como prueba en el juicio ante la corte inferior, existiendo una muy grande probabilidad de que era el mismo que usó el acusado para fines de ofensa y de defensa como se refiere en la denuncia. En verdad que en el acto de la vista el Fiscal de este tribunal concedió o admitió que el bastón era el mismo que fué ofrecido como prueba en la corte inferior. Sin embargo, no se hizo que este bastón o palo formara parte de los autos ni fué certificado a este tribunal en ninguna de las formas conocidas por la ley y no tenemos por tanto derecho o autoridad alguna para tomarlo en consideración al resolver este caso. Una corte de apelación sólo tiene facultades para considerar el récord. *Orama* v. *Oyanguren,* 19 D. P. R., 310, en que se cita, en la página 313, el caso de *England* v. *Gebhardt,* 112 U. S., 502, y otros casos de la Corte Suprema de los Estados Unidos; *Bassing* v. *Cady,* 208 U. S., 388, 389; 2 R. C. L., 106; 2 Cyc., 1074, 1075. El Fiscal no puede aumentar ni quitar de los autos. El secretario de la corte inferior no está autorizado para agregar nada a la exposición del caso. Es el juez de la corte

inferior quien debe certificar respecto a los hechos del juicio, certificación que toma la forma de una exposición del caso o pliego de excepciones. *Calaf* v. *Calaf,* 16 D. P. R., 835; *Orama* v. *Oyanguren,* 19 D. P. R., 310, *supra,* y casos citados. Si el apelante, en lugar de describir un objeto en el pliego de excepciones·o exposición del caso, deseaba enviar el objeto original, la manera de hacerlo está descrita en la regla 40-*b* de esta corte. Por tanto, considerando los autos en la forma en que aparecen, existe prueba suficiente que demuestra que el arma descrita en la denuncia fué ocupada al acusado.

Sentimos que una apelación no sea interpuesta debidamente. Se ha sugerido a este tribunal que envíe el caso a la corte inferior y se permita que ésta prepare una nueva exposición. Semejante práctica serviría más bien para estimular que para impedir las apelaciones que de modo negligente y descuidado son interpuestas para ante este tribunal. El acusado no ha hecho gestión alguna en interés propio que no sea el haber preparado la exposición del caso que se alega es defectuosa. No presentó alegato ni compareció a la vista en esta corte.

Tal vez el acusado preferiría pagar la multa de cinco dólares en vez de seguir molestándose con este asunto. Una corte de apelación tendría tanto derecho a oir prueba que se alega ha sido omitida como a tomar en consideración un objeto que fué omitido. El Fiscal no puede sugerir que se considere por este tribunal una prueba que ha sido omitida. Debe confirmarse la sentencia.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Aldrey.

Los Jueces Asociados Sres. del Toro y Hutchison disintieron.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. DEL TORO.

La mayoría de los jueces de esta corte ha opinado que debe confirmarse la sentencia de la Corte de Distrito de Gua-

yama. A mi juicio la justicia requiere que antes de proce-
derse a la confirmación o revocación de la expresada senten-
cia, se adopte la medida a que me referiré más adelante.

De los autos aparece que la denuncia lleva el número 2399,
e imputa a Lucas Julián la comisión de un delito de portar
armas prohibidas, consistente en habérsele ocupado "sobre
su persona un garrote de 33½ x 4 pulgadas"; que el Fiscal
presentó en el acto de la vista el garrote ocupado, que fué
reconocido por los testigos como un garrote, palo o bastón
de naranjo blanco; que la única defensa del acusado con-
sistió en la alegación de que el garrote, palo o bastón ocu-
pado no constituía un arma prohibida; que después de ha-
berse radicado la transcripción del récord en esta Corte Su-
prema, se recibió en la secretaría de la misma un palo de
33½ pulgadas de largo por 4 de circunferencia en su parte
más ancha, con la siguiente inscripción: "Causa número 2399.
Apeló Supremo. Lucas Julián. 248."; que el secretario de
la corte sentenciadora dirigió luego al Secretario de este
Tribunal Supremo una comunicación oficial en la cual mani-
festó "que el bastón o garrote que le remití el 22 del actual,
por correo, es el que se alega le fué ocupado a Lucas Julián
y que determinó la incoacción contra el mismo de autos por
delito de portar armas prohibidas"; y que el arma ocupada
no se remitió a esta Corte Suprema según el procedimiento
marcado por la sección 40 del reglamento de este tribunal
y por la jurisprudencia constante sobre la materia.

Como puede verse, el examen del arma ocupada es de
importancia capital en este caso para resolver si el acusado
es culpable o no del delito por el cual fué castigado, y como
el examen del palo remitido a este Tribunal Supremo en la
forma indicada me lleva a la conclusión de que no es un arma
prohibida, entiendo que la justicia requiere que se ordene
la devolución de dicho palo a la corte sentenciadora, con
conocimiento de ambas partes, a fin de que sea examinado
por el juez que actuó en el juicio y por su orden remitido a
esta corte de apelación, acompañado de su certificado credi-

tivo de si es o no el mismo que se presentó como prueba en
el acto de la vista.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. HUTCHISON.

Puesto que no discuto los principios generales enunciados
en la opinión de la mayoría y todavía estoy más de acuerdo
con el espíritu que informa la opinión disidente del Juez
Asociado Sr. del Toro y la opinión concurrente en el caso
de *Orama* v. *Oyanguren,* y, no obstante, en vista de todos las
circunstancias me sentí obligado a votar en primer término
en contra de la proposición contenida en dicha opinión disi-
dente al ser llamada primeramente la atención del tribunal
respecto a la misma, y en segundo lugar, a disentir de la con-
clusión a que llegó la corte en este caso y de la resolución
final del mismo, la exposición breve de las razones que pue-
dan justificar o nó mi actitud se debe tánto a la corte como
a mí mismo.

Estoy enteramente de acuerdo con la doctrina sentada
en la opinión de la mayoría relativa a que una corte de ape-
lación sólo tiene facultad para considerar el récord; que el
Fiscal no puede aumentar ni quitar de los autos; que el secre-
tario de la corte inferior no está autorizado para agregar
nada a la exposición del caso, y que es el juez de la corte infe-
rior quien debe certificar respecto a los hechos del juicio
mediante una exposición del caso o pliego de excepciones.
Sin embargo, la aplicación que en realidad se ha hecho de
estas cuestiones abstractas a los hechos de este caso es otra
cuestión muy diferente.

Las reglas 40a y 40b de este tribunal fueron adoptadas
como enmiendas por resolución de junio 25 de 1910. El ar-
tículo 299 del Código de Enjuiciamiento Civil quedó enmen-
dado en sentido algo parecido en el año 1911, pero la en-
mienda legislativa no se ajusta al texto de las reglas enmen-
dadas. Existen ciertas diferencias más o menos importantes
que pueden establecerse, pero ésta es una cuestión en la cual
no es necesario insistir por ahora. Será bastante con sugerir

que en lo que respecta a cualquier conflicto que pueda haber, la regla debe estar subordinada al estatuto, a menos que dicho estatuto sea *ultra vires* y nulo.   Además, ni la regla de la corte ni el estatuto de referencia tiene ninguna aplicación a un caso criminal, a no ser que sea por analogía, de conformidad con los principios generales de buena práctica y por razón de la regla 94 que prescribe que "éstas reglas regularán las apelaciones en causas civiles, así como las que se interpongan en causas criminales, *en cuanto les sean aplicables.*"

Para los fines de esta opinión puede admitirse que la regla 40*b* establece la verdadera práctica que ha de ser observada así en casos civiles como criminales.   De ahí no se infiere necesariamente que esta corte o cualquier otra esté tan "circunscrita, encerrada o limitada" por sus propias reglas, adoptadas por la misma como es de presumirse para promover más bien que para anular los fines de la justicia que es igual para todos, que deba cerrar los ojos a la luz de la verdad demostrada por hechos incontrovertibles e indiscutibles, y en abierta sumisión a la letra y haciendo enteramente caso omiso del espíritu de dichas reglas, declarar culpable de un delito a un hombre que, como cuestión de sentido común ordinario, sabe que según todas las probabilidades humanas es inocente de todo delito, cualquiera que fuere el conocimiento que pueda o no tener judicialmente dicha corte desde un punto de vista técnico legal.   Eso es, con toda deferencia y respeto y sin hacer referencia alguna, desde luego, a los motivos cuya sinceridad absoluta y pureza están fuera de toda sospecha, según mi humilde opinión, lo que prácticamente ha hecho esta corte en este caso.   Siendo ésta mi firme convicción, todo esfuerzo por ocultar la verdadera razón de mi disensión o por desvirtuar el alcance e importancia y carácter perjudicial del precedente establecido, tal como lo considero, envolvería cierto grado de cobardía moral si no una flagrante violación del juramento que he prestado de mi cargo como también de mi deber como juez.

El objeto y fin de la disposición contenida en la regla 40*b*, relativa a que en la relación de hechos habrá de hacerse una descripción del comprobante (*exhibit*) original que se pretenda enviar a esta corte, es lo que de modo expreso se determina en dicha regla como la verdadera identificación de dicho *exhibit*. Las reglas 55 y 56 reconocen expresamente que en moción para corregir la transcripción el secretario, si hubiere causa suficiente, así como el juez si lo exigieren las circunstancias, deben certificar toda o parte de la transcripción, o puede ser ésta presentada debidamente certificada sin previa orden de esta corte. También se establece una distinción entre los casos en los cuales se discute dicho error y aquellos en que no existe controversia en cuanto al particular.

Ninguno de los motivos que sirven de fundamento a la regla general según la cual deberá incluirse en los autos toda la prueba por medio de un pliego de excepciones, u otro documento semejante para que pueda la corte de apelación considerar el mérito y suficiencia de la misma; ninguna de las razones que ordinariamente harían que la corte sentenciadora ejercitara la discreción a que se refiere la regla 40*b*, fuera del límite hasta el cual parece haber sido ejercitada dicha discreción en este caso se ha demostrado que existan en este caso. No hubo sino un solo comprobante (*exhibit*) ante la corte y uno solamente fué el que se ofreció o trató de presentar como prueba. Toda la prueba aducida ha sido sometida a nuestra consideración con excepción únicamente, de acuerdo con el criterio de la mayoría, de ese solo comprobante (*exhibit*). La consideración de dicho *exhibit* por este tribunal no era posible que diera por resultado que los fines de la justicia quedaran frustrados en este caso concreto, ni tampoco podía haber en ello ninguna verdadera injusticia hacia el juez sentenciador.

Si ese comprobante (*exhibit*) hubiera sido descrito en la relación de hechos independientemente de las declaraciones de los testigos y de la denuncia, como en realidad se describe

en la referida denuncia y por dichos testigos, y si el juez sen-
tenciador al solicitársele se hubiera negado a permitir que
fuera enviado a esta corte, seguramente que semejante abuso
de discreción hubiera sido corregido prontamente por medio
de la debida orden de este tribunal. Y si el apelante, el juez
y secretario, todos hubieran observado estrictamente cada
uno de los particulares especificados en la regla 40*b*, enton-
ces aun cuando el comprobante (*exhibit*) en cuestión indis-
cutiblemente que hubiera sido identificado en forma más regu-
lar, difícilmente podría decirse que ha sido más enteramente
identificado de lo que lo está en realidad.

La única cuestión planteada y sometida por la defensa
en la corte inferior, el único punto envuelto en la apelación,
es si el palo ocupado al acusado, presentado como prueba
en el juicio y marcado para su identificación ''Causa No.
2399, apelada a la Corte Suprema, Lucas Julián, 248, el cual
fué debidamente envuelto en impresos en blanco de listas
oficiales para pagos de jurados (Fórmulas de auditoría No.
157, R. 3804, Dic. 6, 1912, 1000), y enviado por correo por
el secretario de la corte de distrito al de este tribunal, acom-
pañado de una comunicación escrita en un pliego de papel
oficial de la Corte de Guayama en la que se asegura que es
el mismo bastón que se alega fué ocupado al acusado y que
determinó la incoacción de este proceso, es un bastón o ga-
rrote, cuyo bastón fué entregado por el secretario de esta
corte el Fiscal de la misma a solicitud de éste y en presen-
cia de este tribunal en el acto de la vista y sometido por el
mismo Fiscal a nuestra consideración con laudable franqueza
y me pareció claramente sin verdadera esperanza que la con-
vicción podía subsistir.

La opinión de la mayoría admite tácitamente que es un
bastón y no un arma prohibida, o al menos en ella se evita
cuidadosamente el clasificarlo como garrote y se reconoce
expresamente fuera de toda duda razonable, que es el mismo
comprobante (*exhibit*) por el cual se declaró culpable al
acusado; y, sin embargo, por la sola razón al parecer de que

el apelante, su abogado o el juez sentenciador dejó de cumplir estrictamente con las formalidades prescritas no por el Código de Enjuiciamiento Criminal, sino por una regla de esta corte en dicha opinión se elimina enteramente la cuestión esencial y sin consideración de los méritos se confirma la sentencia y decreto de la corte inferior.

El bastón en cuestión es una pieza lisa y recta de naranjo blanco, algo óvala más bien que redonda, de cerca de una pulgada por una pulgada y cuarto en un extremo, disminuyendo poco a poco hasta próximamente una pulgada o quizás menos de una pulgada de diámetro en el otro extremo y "nudoso" de tal modo que tiene un número de pequeñas protuberancias muy cepilladas y en forma de borbollones que sugieren su primitiva existencia y desaparición de renuevos, espinas o pequeñas ramas, teniendo tal vez el mayor de éstos "nudos" en su centro algo más de un octavo y menos de un cuarto de pulgada de diámetro. Si se arregla un poco más, pone un mango de metal y regatón y lo usa una persona de buen porte sin antecedentes en el juzgado, que no esté ya bajo sospechas o vigilancia, ni siquiera en época de elecciones llamaría la atención de ningún policía de la isla. Podría ser usado con verdadero resultado como arma de ofensa o defensa en cualquier accidente imprevisto lo mismo que cualquier otro bastón que pudiera usarse de tal modo. Si esta corte hubiera resuelto que dicho palo era un garrote más bien que un bastón, es probable que hubiera disentido pero apenas me hubiera sentido dispuesto a formular una opinión disidente. Pero se dice en la opinión de la mayoría con bastante claridad, que por sencillo y flexible que hubiera sido, por imposible de ser clasificado como un "garrote" dicho comprobante (*exhibit*) no pudo haberse considerado en absoluto al resolver este caso.

Si tenemos presente que la misma regla debe aplicarse a los casos de *felony* como a los de *misdemeanor* entonces se notará más la importancia de la sentencia dictada en este caso. Si en este caso hubiera sido declarado culpable el

acusado de asesinato en primer grado y condenado a muerte;
si en la denuncia se hubiera alegado y probado de modo
concluyente por la prueba que la muerte fué producida por
un arma de fuego de calibre 44; si la culpabilidad o inocencia
del acusado dependía única y exclusivamente de si el arma
que le fué ocupada fué o nó en realidad el instrumento em-
pleado al cometer el delito; si en vez de un bastón el único
comprobante (*exhibit*) en el caso fuera un rifle calibre 22,
el que se alegó que fué presentado como prueba como el arma
ocupada al acusado, y el arma con la cual se alegó que fué
cometido el delito aun en ese caso, de acuerdo con el criterio
de la opinión de la mayoría, la sentencia y decreto de muerte
inevitablemente que hubiera sido confirmada. Cualesquiera
dudas que de otro modo pudieran existir respecto a la posi-
bilidad de un resultado distinto en un caso de pena capital
parecen desaparecer si se considera detenidamente el caso de
*El Pueblo* v. *Concepción,* 21 D. P. R., 311, en el cual un estatuto
cuyo objeto claro e inequívoco es ordenar que ninguna per-
sona en esta isla sufrirá la pena de muerte hasta tanto esta
corte haya considerado la suficiencia de la prueba sometida
al jurado fué anulado mediante interpretación por un pro-
cedimiento semejante de razonamiento estrictamente técnico
en una opinión en la cual se admite sustancialmente que las
palabras mismas por las que puede llegarse a conocer la
intención legislativa son "meramente superfluas," "anóma-
las" e inexplicables por ninguna otra teoría que la muy clara
teoría que ha sido rechazada por la corte y al mismo tiempo
se resuelve en dicho caso que este tribunal carece de juris-
dicción para considerar en absoluto la relación de la prueba
certificada por el juez de distrito de conformidad con dicha
disposición legislativa.

En el presente caso solamente declararon tres testigos:
dos por parte de la acusación y el acusado en su propia
defensa. No existe conflicto alguno en la prueba fuera de
la variación en las frases usadas por los testigos al hacer

referencia al *exhibit*. La exposición del caso se compone de dos páginas. Está aprobada en la forma ordinaria por el juez de distrito que certifica, entre otras cosas, ''que es una correcta relación de los hechos ocurridos en el juicio de la causa indicada y que dicha exposición del caso contiene toda la evidencia ofrecida y admitida en dicho juicio.'' En ella se dice expresamente que ''el fiscal presentó como prueba el bastón y la defensa aceptó que ese palo lo llevaba el acusado y le fué ocupado por el policía Cruz en la fecha expresada en la denuncia.'' Y otra vez al terminar la prueba del acusado que ''la defensa somete el caso a la corte pidiendo que tome en cuenta las dimensiones del bastón para que la corte determine si es o no arma prohibida de acuerdo con la ley. El policía declara que ''el garrote era de naranjo blanco'' y todos y cada uno de los testigos identifican el palo.

El artículo 362 del Código de Enjuiciamiento Criminal prescribe que ''después de celebrada la vista de la apelación la Corte Suprema debe dictar sentencia sin parar mientes en los errores o defectos técnicos o de forma, o en excepciones que no afecten a los derechos sustanciales de las partes.''

''El artículo 1 de una Ley relativa a la revocación de sentencias en causas criminales por la Corte Suprema, etc., aprobada en mayo 30, 1904, Leyes de 1905, página 16, dispone lo siguiente:

''Siempre que resultare de los autos en alguna causa criminal apelada a la Corte Suprema que cualquier requisito legal haya sido desatendido por el tribunal sentenciador, no se anulará la sentencia a menos que el error que de los autos resultare tendiere a perjudicar los derechos de cualquiera de las partes, y se hubiere interpuesto la debida excepción en el tribunal sentenciador; *disponiéndose, sin embargo,* que el tribunal de apelación podrá conocer de errores fundamentales que aparecieren en los autos, aun cuando no se hubiere interpuesto objeción a ellos, y fallar sobre los mismos con arreglo al derecho que de los hechos se desprendiere.''

Aun cuando la excepción (*proviso*) que acaba de citarse hubiera sido omitida completamente, parece inconcebible que la ley que prohibe la revocación de una sentencia en causa criminal por errores que no perjudican o por prescindirse de las prescripciones del estatuto, exija de modo inexorable que se confirme dicha sentencia aun cuando aparezca que no se ha cometido ningún delito meramente porque la prueba concluyente de tal hecho haya sido sometida a la consideración de este tribunal en forma más o menos irregular.

Atendidas las circunstancias de este caso lo menos que este tribunal debió haber hecho hubiera sido el expedir la orden a que se ha hecho referencia en la opinión disidente del Juez Asociado Sr. del Toro, pero aun esto era innecesario. En tales condiciones y de acuerdo con la sección 362, *supra,* a falta de objeción y en vista de la renuncia del fiscal a toda irregularidad, esta corte muy bien pudo haber considerado la relación de hechos así como la certificación que de la misma hizo el juez como suficiente para la remisión del *exhibit* por el secretario y su comunicación como una certificación suficiente de la identificación, o de no ser así pudo entonces haber dado instrucciones al secretario de este tribunal para solicitar del secretario de la corte de distrito por carta o telegrama que remitiera una certificación en forma de acuerdo con la regla 40*b* o el artículo 299 del Código de Enjuiciamiento Civil. No había necesidad de ninguna opinión ni de nada más que una orden *per curiam* igual a las que diariamente se dictan en asuntos de menos importancia; y no puedo comprender por qué este Tribunal a iniciativa propia tenía que haberse separado de su curso ordinario para promover semejante cuestión técnica y discutirla con tal extensión.

La sentencia de la corte inferior debió haber sido revocada y absuelto el acusado.